## MATTER OF FRIGON

### In Visa Petition Proceedings

### Hou-N-10770

*Decided by Commissioner September 17, 1981*

(1) Section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(H)(i), defines a nonimmigrant alien trainee as an alien having a residence in a foreign country which he has no intention of abandoning and who is coming temporarily to the United States as a trainee, other than to receive graduate medical education or training.

(2) 8 C.F.R. 214.2(h)(4) provides that a trainee shall not be permitted to engage in productive employment if such employment will displace a United States resident and, while not prescribing specific requirements, lists a number of informational factors which a petitioner must furnish and which a Service District Director must consider.

(3) Other criteria for qualifying for H-3 nonimmigrant visa classification: Existence of an actual training program, *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (R.C. 1972); training program must not be for the purpose of recruiting and training aliens for the staffing of United States firms, *Matter of Glencoe Press*, 11 I&N Dec. 764 (R.C. 1966); training must be purposeful and not just incidental to productive employment, *Matter of Sasano*, 11 I&N Dec. 363 (R.C. 1965); and, repetition, review, and practical application of skills alone do not constitute a training program, *Matter of Masauyama*, 11 I&N Dec. 157 (Actg. R.C. 1965).

ON BEHALF OF PETITIONER: Harry Gee, Esquire
2308 First City National Bank Building
Houston, Texas 77992

The application is before the Commissioner on certification from the Regional Commissioner pursuant to 8 C.F.R. 103.4. The petition was approved on January 16, 1981 by the District Director. On February 5, 1981, the District Director rendered a new decision approving the petition based upon his own motion and certified the decision to the Regional Commissioner. In a decision dated March 5, 1981, the Regional Commissioner denied the petition.

The petitioner is Resource Drilling, Inc., an oil well exploration and drilling company based in Houston, Texas. The beneficiary is Denis Frigon, a native and citizen of Canada, who is presently employed in the occupation of "driller" by Arrowhead Drilling, Ltd., of Calgary, Alberta, Canada, a wholly owned subsidiary of the petitioner. According to the petitioner (letter of Executive Vice President Paul L. Yount, dated

January 6, 1981), "driller" is the occupational title of one of the five levels of employees on most domestic land rigs. The position is at a level of experience and training which is ranked higher than the occupational titles "floorman" "Derrickman" and "motorman" but is subordinate to the occupational titles of "rig manager" and "area manager." The petitioner claims that it generally takes 5 years for a new employee to work up to the position of driller and another 5 years to obtain the position of rig manager.

The petitioner initially sought to classify the beneficiary as a trainee under section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(H)(i), based upon a proposed two year training program. However, in its response to the District Director's motion to reopen, the petitioner stated that the average length of time for the training is "probably one year," although the length of time could vary. The stated purpose of the training is to "cut in almost half," the period of experience required to permit new employees to progress to the higher occupational levels in the operation of land based oil rigs (letter of Paul L. Yount, February 6, 1981). During the beneficiary's presence in the, United States, he will be paid a salary of $847.60 per week.

The training program consists of 75 hours of classroom training. The remaining working hours are to be spent in supervised on-the-job training. Classroom instruction will involve several topics of which 24 hours will be devoted to well control, 4 hours to blow out prevention, 8 hours in first aid, 8 hours in drilling fluids and downhole theory and the remainder in a variety of other subjects. The unit on well control and blowout prevention involves the use of a training device known as a "blowout control simulator." The petitioner advises that few of these devices are available, that Resource Drilling, Inc., will be only one of two exclusively land drilling companies to own this equipment, that their equipment is located in the United States, and that similar devices are not available to Resource Drilling or its subsidiary, Arrowhead Drilling, Ltd., in Canada.

Section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. 1101(A)(15)(H)(i), provides for the admission of a nonimmigrant alien trainee as follows:

(H) an alien having a residence in a foreign country which he has no intention of abandoning . . . . (i) who is coming temporarily to the United States as a trainee, other than to receive graduate medical education or training . . . .

The regulatory discussion of the nonimmigrant alien trainee is contained in Title 8, Code of Federal Regulations, Part 214.2(h)(4). That provision states that a trainee shall not be permitted to engage in productive employment if such employment will displace a United States resident. While not prescribing specific requirements, the regulatory

165

provision lists a number of informational factors which a petitioner must furnish and which a Service District Director must consider. These elements include a description of training including the proportion of time devoted to productive employment, the number of hours devoted to on-the-job training without supervision and in classroom instruction, identification of the position for which the training will prepare the beneficiary, an explanation of why the training cannot be obtained in the alien's country, and why it is necessary for the alien to be trained in the United States.

Other criteria for qualifying for H-3 nonimmigrant visa classification have been developed from both the regulatory language and from administrative decisions interpreting law and regulation. These criteria include the finding that there must exist an actual training program (*Matter of Treasure Craft of California*, 14 I&N Dec. 190 (R.C. 1972)), that the training program must not be for the purpose of recruiting and training aliens for the staffing of United States firms (*Matter of Glencoe Press*, 11 I&N Dec. 764 (R.C. 1966)), that the training must be purposeful and not just incidental to productive employment (*Matter of Sasano*, 11 I&N Dec. 363 (R.C. 1965)), and that repetition, review, and practical application of skills alone do not constitute a training program (*Matter of Masauyama*, 11 I&N Dec. 157 (Actg. R.C. 1965)).

In his decision of March 5, 1981, denying the visa petition, the Regional Commissioner concluded: (1) that the description of classroom instruction for the most part involved care and maintenance of equipment commonly used in the drilling industry and that the petitioner had failed to establish that this and other training was not available in Canada, (2) that the petitioner had failed to demonstrate that the well drilling simulator which was portable could not be transported and used in Canada and, (3) that because the beneficiary (and others on the rig) would be involved in productive employment, the petitioner had failed to satisfactorily demonstrate that United States workers would not be displaced.

Upon review, I must agree with the Regional Commissioner that the petitioner has not met his burden of proof. The number of classroom hours constitutes approximately 5% of the training period if the program length is limited to one year. The classroom curriculum includes many subject areas such as basic first aid, engine care, proper care of drill pipe, and other areas which a mid-level rig worker may either be expected to have learned or which could be easily taught in Canada. The petitioner has placed great emphasis on the argument that its well control simulator cannot be relocated to Canada and that many of its instructors are based in Houston and possess expert knowledge. Even assuming these facts to be correct, this circumstance alone does not warrant favorable action on the petition when 95% or more of the

beneficiary's time will be on the rig at a salary of $847.60 per week. The petitioner has access to the B-1 nonimmigrant visa classification to bring employees to the United States to attend training courses of short duration if classroom training is not available in Canada.

The central issue here is the effect or potential effect of productive employment upon United States workers balanced against the petitioner's need or purpose in training the alien beneficiary. The petitioner through counsel states in a supplemental brief dated June 23, 1981, that the purpose of the training is "more efficient performance of [the beneficiary's] duties and responsibilities so as to avoid accidents and down time on the rigs" and to permit employees to "not only be able to perform their present duties better but . . . also get basic training for advancement." These goals are of a general nature and would certainly be found as ongoing goals for any responsible employer in structuring his workplace. I remain unconvinced that these goals cannot be achieved in Canada or elsewhere. This conclusion is significant when weighed against the potential injury to United States resident workers. In the supplemental brief of June 23, 1981, counsel responded to a Service inquiry as to the number of U.S. workers which will be employed on the rigs as follows:

There will not be any number of United States workers on the rigs during the training period. Moreover, the workers will learn to work as a unit and the techniques and procedures in the operation of the rig require hands on experience.

This response reflects that the purpose of the beneficiary's proposed presence in the United States is to obtain experience as opposed to training. The response also reveals a situation where there are few or no United States workers regardless of skill level and where substantial productive employment will occur. A conclusion that productive employment will occur is inescapable in view of the substantial expense involved in erecting and operating a drilling rig. Training here must be viewed as an incidental product of the rig's operation over a one or two year period.

The petitioner would argue that there is a general shortage of rig workers in the United States, that United States labor is unavailable and that displacement of United States workers is not at issue. Even conceding a general labor shortage nationwide, local employment conditions may vary considerably. Also, the petitioner's intention to have rig crews composed wholly or primarily of alien workers potentially threatens employment access for beginning United States workers at entry levels or promotion for United States oil rig workers seeking advancement.

In view of these potential effects and the high percentage of "on-the-job" presence of the beneficiary, it is concluded that the petitioner has not met his burden establishing entitlement to the classification sought.

The Regional Commissioner's decision of March 5, 1981 is consistent with both regulations and the precedent decisions discussed above. The petitioner still has access to the B-1 nonimmigrant classification to allow the employees of its Canadian subsidiary to benefit from classroom instruction of short duration. The use of this alternative classification represents a reasonable and balanced means for the petitioner to meet his needs while still protecting the interests of United States resident workers. The H-3 classification is not an appropriate vehicle to assist United States companies to meet their needs for labor or to provide training and experience to foreign workers which are incidental to productive employment.

**ORDER:** Petition denied.